THE STATE EX REL. BARONI, APPELLANT, *v.* COLLETTI ET AL., APPELLEES.

[Cite as *State ex rel. Baroni v. Colletti,* 130 Ohio St.3d 208, 2011-Ohio-5351.]

*R.C. 124.32—Ohio Adm.Code 123:1-30-04—Employee not entitled to back pay or vacation-leave credit—Public employer complied with timeline for reinstatement.*

(No. 2011-0455—Submitted September 6, 2011—Decided October 19, 2011.)

APPEAL from the Court of Appeals for Summit County, No. 25334.

_____

**Per Curiam.**

{¶ 1} This is an appeal from a judgment dismissing a complaint for a writ of mandamus. The requested writ seeks to compel a public employer to provide an employee with either back pay or vacation-leave credit for the period between the employee's certification by his treating physician that he was able to return to work and his reinstatement to the payroll by his employer. Because the pertinent statutes and administrative rules do not authorize this relief under the circumstances of this case, we affirm the judgment of the court of appeals.

## Facts

{¶ 2} Appellant, James E. Baroni, is employed by appellee Ohio Department of Mental Health ("ODMH") in the position of Building Superintendent I in its Northcoast Behavioral Healthcare Facility ("Northcoast") in Summit County, Ohio. Appellee Sandra Stephenson is ODMH's director, and appellee David Colletti is Northcoast's chief executive officer. Baroni was involuntarily separated from his employment due to disability.

{¶ 3} On December 10, 2009, Baroni applied to be reinstated to his position pursuant to Ohio Adm.Code 123:1-30-04. Baroni submitted with his

application a November 25, 2009 letter from his treating physician, Michael E. Felver, M.D., that cleared him to return to work on December 28, 2009.

{¶ 4}  ODMH referred Baroni to another physician, Dean W. Erickson, M.D., for an independent medical examination.  Dr. Erickson diagnosed him with a "[h]istory of osteomyelitis of the lumbar spine complicated by congestive heart failure, renal failure, pleural effusions, malnutrition, decubitus ulcers and gastrointestinal bleeding, all currently stable with minimal residual decubitus wound in the lower lumbosacral spine," "[p]re-existing bilateral shoulder rotator cuff weakness with severe loss of range of motion," "[r]ight knee degenerative arthritis with loss of range of motion," "[s]evere right thumb degenerative arthritis with loss of motion," "[p]re-existing cardiovascular disease with status post 3-vessel coronary artery bypass graft with hypertension, under good control," "Type II diabetes with diabetic peripheral neuropathy, currently controlled with diet and minimal medications," and "[h]istory of severe malnutrition, status post rehabilitation, which is ongoing."

{¶ 5}  Dr. Erickson concluded that Baroni was capable of returning to his former position as Building Superintendent I, but "only with significant restrictions," including "[l]imit[ing] lifting, carrying, pushing, and pulling to 10 pounds," avoiding "ladder and stair climbing, crawling, crouching, or kneeling," working no more than "40 hours per week," "[l]imiting standing and walking to a total of 1 to 2 hours per day," and using a cane.  Dr. Erickson further concluded that Baroni was "not able to perform all of the physical functions" of his previous position and that it was "medically probable that some of his restrictions" were "due to pre-existing orthopedic conditions" that were unchanged.

{¶ 6}  On January 14, 2010, Dr. Erickson submitted his report to ODMH.  ODMH then held a pre-reinstatement hearing on February 4.  By letter dated February 5, 2010, ODMH notified Baroni that it had granted his reinstatement request and that he would be reinstated to his former position as Building

2

Superintendent I effective February 14, 2010, with February 16, 2010, as his first day to report to work. The ODMH order did not specify that Baroni would be entitled to back pay or credit for the vacation leave he used while his application for reinstatement was pending. Baroni resumed his job on February 16, 2010.

**{¶ 7}** Because Baroni's disability benefits expired near December 28, 2009, the date that his treating physician certified that he could resume his job with ODMH, Baroni had asked his employer to charge his vacation-leave account while his application for reinstatement remained pending.

**{¶ 8}** On February 15, 2010, Baroni appealed the ODMH reinstatement order to the State Personnel Board of Review, to the extent that the order did not award him back pay or credit his vacation leave for the period from December 28, 2009, the date that his treating physician certified that he could return to work, to February 13, 2010, the day before he was returned to the payroll. In March 2010, an administrative-law judge for the board recommended that Baroni's administrative appeal be dismissed for lack of jurisdiction. The board then dismissed Baroni's administrative appeal for lack of jurisdiction.

**{¶ 9}** On April 5, 2010, Baroni filed a verified complaint in the court of appeals for a writ of mandamus to compel appellees, ODMH, its director, and the Northcoast CEO, to remit back pay or restore vacation-leave credit charged against his account for the period from December 28, 2009, through February 13, 2010. Appellees filed a motion to dismiss, and Baroni filed a brief in opposition. On February 11, 2011, the court of appeals granted appellees' motion and dismissed Baroni's complaint.

**{¶ 10}** This cause is now before the court upon Baroni's appeal as of right.

### Legal Analysis

**{¶ 11}** To be entitled to the writ, Baroni had to establish a clear legal right to the requested back pay or credit for vacation leave, a corresponding clear legal

duty on the part of appellees to provide the back pay or vacation-leave credit, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 22.

**{¶ 12}** In support of his claim, Baroni relies on R.C. 124.32 and Ohio Adm.Code 123:1-30-04. R.C. 124.32 provides:

**{¶ 13}** "(B) Any person holding an office or position in the classified service who has been separated from the service without delinquency or misconduct on the person's part may be reinstated within one year from the date of that separation to a vacancy in the same office or in a similar position in the same department, except that a person in the classified service of the state only may be reinstated with the consent of the director of administrative services. But, *if that separation is due to injury or physical or psychiatric disability, the person shall be reinstated in the same office held or in a similar position to that held at the time of separation, within thirty days after written application for reinstatement, if the person passes a physical or psychiatric examination made by a licensed physician, a physician assistant, a clinical nurse specialist, a certified nurse practitioner, or a certified nurse-midwife showing that the person has recovered from the injury or physical or psychiatric disability, if the application for reinstatement is filed within two years from the date of separation, and if the application is not filed after the date of service eligibility retirement.* The physician, physician assistant, clinical nurse specialist, certified nurse practitioner, or certified nurse-midwife shall be designated by the appointing authority and shall complete any written documentation of the physical or psychiatric examination." (Emphasis added.)

**{¶ 14}** The administrative rules provide more detailed insight. Under Ohio Adm.Code 123:1-30-01, "[a]n employee who is unable to perform the essential job duties of the position due to a disabling illness, injury or condition

4

may be involuntarily disability separated." Ohio Adm.Code 123:1-30-04 governs the specific procedure for the reinstatement of a classified employee separated from employment on the basis of involuntary disability. "An employee may make a written request to the appointing authority for reinstatement from a disability separation," and the "appointing authority shall notify the employee of its decision to approve or deny the reinstatement request no later than sixty days after it receives the employee's written request." Ohio Adm.Code 123:1-30-04(A). "The employee's request for reinstatement shall be accompanied by substantial, credible medical evidence that the employee is once again capable of performing the employee's essential job duties." Ohio Adm.Code 123:1-30-04(B). "Upon receiving this evidence, the appointing authority shall either reinstate the employee or require the employee to submit to a medical or psychological examination * * *." Id.

{¶ 15} If the appointing authority decides to order the employee to submit to a medical or psychological examination, it must review the results and "make an initial determination of whether or not the employee is capable of performing the essential duties of the employee's position." Ohio Adm.Code 123:1-30-04(C). If the appointing authority "initially determines that the employee remains incapable of performing the essential job duties, the appointing authority shall institute a pre-reinstatement hearing." Id.

{¶ 16} The appointing authority then makes a final determination and decides whether to reinstate the employee. Ohio Adm.Code 123:1-30-04(E). "Once an appointing authority determines that the employee is to be reinstated, then the employee has a right to be assigned to a position in the classification the employee held at the time of disability separation." Ohio Adm.Code 123:1-30-04(G). An employee who is refused reinstatement can appeal to the State Personnel Board of Review within 30 days of receiving notice of the refusal. Ohio Adm.Code 123:1-30-04(I).

**{¶ 17}** Baroni argues that these provisions, and in particular R.C. 124.32, supply the clear legal right and clear legal duty supporting his claim for back pay or vacation-leave credit from the date that his doctor certified that he could return to work until the date that he was reinstated to the payroll.

**{¶ 18}** "The interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand." *Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.*, 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36. "We must read undefined words and phrases [in statutes and administrative rules] in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, 884 N.E.2d 39, ¶ 14. And because they relate to the same subject matter, we construe R.C. 124.32 and Ohio Adm.Code 123:1-30-04 in pari materia. See, e.g., *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 43.

**{¶ 19}** Notwithstanding Baroni's argument to the contrary, R.C. 124.32 does not support his claim. Under the pertinent language of that statute, the duty to reinstate the classified employee within 30 days after written application to the same position held or to a similar position to that held at the time of separation is contingent upon several things, including that the person pass "a physical or psychiatric examination made by a licensed physician, a physician assistant, a clinical nurse specialist, a certified nurse practitioner, or a certified nurse-midwife showing that the person has recovered from the injury or physical or psychiatric disability." The conclusory report from Baroni's treating physician, which Baroni submitted with his request for reinstatement, did not constitute the report referred to in the statute so as to invoke the duty of reinstatement, because the medical report was required to be made by a designee of the appointing authority. R.C. 124.32(B) ("The physician, physician assistant, clinical nurse specialist, certified

nurse practitioner, or certified nurse-midwife shall be designated by the appointing authority and shall complete any written documentation of the physical or psychiatric examination").

{¶ 20} Moreover, ODMH's initial determination that Baroni was incapable of performing the essential job duties of his former position was reasonable based on Dr. Erickson's conclusion that Baroni was "not able to perform all of the physical functions" of his former position. This initial determination by ODMH authorized it to conduct the pre-reinstatement hearing. Ohio Adm.Code 123:1-30-04(C).

{¶ 21} Therefore, appellees acted properly when they notified Baroni on February 5—just one day after the pre-reinstatement hearing—that he would be returned to the payroll on February 14, 2010. As the court of appeals determined, ODMH complied with the timeline for reinstatement specified in the administrative rule by notifying Baroni of the decision to reinstate him "no later than sixty days after it" received Baroni's request on December 10, 2009. Ohio Adm.Code 123:1-30-04(A).

{¶ 22} Under these circumstances, which were alleged by Baroni in his complaint, neither R.C. 124.32 nor Ohio Adm.Code 123:1-30-04 required that appellees remit back pay or credit the vacation leave he used between December 28, 2009, and February 13, 2010. The plain language of these provisions does not support Baroni's interpretation, and we cannot create this legal duty by adding language to the pertinent provisions. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18 ("It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the *legislative branch of government*, and courts are not authorized to create the legal duty enforceable in mandamus" [emphasis sic]); *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107

Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 29 (we cannot add or delete words in interpreting statutes).

### Conclusion

**{¶ 23}** Based on the foregoing, the court of appeals correctly dismissed Baroni's complaint for extraordinary relief in mandamus to compel the award of back pay or vacation-leave credit. Therefore, we affirm the judgment of the court of appeals. In addition, we deny Baroni's request for oral argument because the parties' briefs are sufficient to resolve this appeal.

Judgment affirmed.

LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

O'CONNOR, C.J., not participating.

_____

Law Offices of S. David Worhatch and S. David Worhatch, for appellant.

Michael DeWine, Attorney General, and Komlavi Atsou, Assistant Attorney General, for appellees.

_____