[Cite as *Henry v. Kohl's Dept. Stores, Inc.*, 2019-Ohio-2094.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| LAURA HENRY, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-L-113** |
| KOHL'S DEPARTMENT STORES, INC., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2013 CV 001398.

Judgment:  Affirmed.

*Patrick J. Perotti*, *Nicole T. Fiorelli*, and *Frank A. Bartela,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH  44077 (For Plaintiff-Appellant).

*Lisa Babish* and *Katie L. Steiner*, Vorys Sater Seymour & Pease, LLP, 200 Public Square, Suite 1400, Cleveland, OH  44114 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1}    Appellant, Laura Henry ("Ms. Henry"), appeals the judgment of the Lake County Court of Common Pleas granting summary judgment in favor of appellee, Kohl's Department Stores, Inc.  At issue is whether the trial court erred in determining a Kohl's advertisement was not deceptive under the Consumer Sales Practices Act as a matter of law.  After a careful review of the record and pertinent law, we affirm.

## Substantive History and Procedural Background

**{¶2}** This case involves whether an advertisement from Kohl's Department Stores, Inc. ("Kohl's") violates Ohio's Consumer Sales Practices Act ("CSPA").

**{¶3}** Kohl's issued advertisements and marketing materials offering customers the opportunity to earn $10 Kohl's Cash coupons for every $50 the customers spent during a specified "earning period" (the "Kohl's Cash advertisement"). The recipient of Kohl's Cash coupons could then redeem them on purchases at Kohl's during a specified "redemption period."

**{¶4}** Kohl's permitted its customers to combine their Kohl's Cash coupons with other coupons, including percent-off coupons that Kohl's periodically issued to its customers. When a customer used a Kohl's Cash coupon along with a percent-off coupon, Kohl's practice was to apply the Kohl's Cash coupon first and the percent-off coupon second.

**{¶5}** Kohl's did not disclose this order of application in the Kohl's Cash advertisement. However, Kohl's *did* disclose the order of application directly on the back of the Kohl's Cash coupon.

**{¶6}** On March 30, 2013, Ms. Henry purchased $375.89 of merchandise at a Kohl's store. Kohl's then issued her a $70 Kohl's Cash coupon, consistent with the Kohl's Cash advertisement offering $10 Kohl's Cash coupons for every $50 spent.

**{¶7}** On April 2, 2013, Ms. Henry purchased $80.24 of merchandise at a Kohl's store and presented two coupons—the $70 Kohl's Cash coupon and a 20 percent-off coupon. Consistent with its practice, Kohl's deducted the $70 Kohl's Cash coupon first

2

to reduce the price to $10.24.  It then applied the 20 percent-off coupon to reduce the price by an additional $2.05, for a total purchase price of $8.19 plus tax.

{¶8}    If Kohl's had applied the 20 percent-off coupon before the Kohl's Cash coupon, the price would have first been reduced by $16.05 to $64.19.   After deducting the $70 Kohl's Cash coupon, Ms. Henry would have retained $5.81 in Kohl's Cash instead of owing additional funds.

{¶9}    Ms. Henry filed a class action complaint against Kohl's in the Lake County Common Pleas Court alleging deceptive advertising in violation of the CSPA. Specifically, Ms. Henry alleged Kohl's violated Ohio Admin.Code 109:4-3-02(A)(1), an administrative rule issued pursuant to the CSPA, by "advertis[ing] its Kohl's Cash promotion in written and/or printed advertising or promotional literature without stating * * * in close proximity to the words stating the offer any * * * any reservations, limitations, * * * or conditions" on how [Kohl's] applies percent-off coupons to transactions by customers using earned Kohl's Cash."

{¶10} Because Kohl's did not disclose in close proximity to the Kohl's Cash advertisement the order in which Kohl's Cash coupons and percent-off coupons were applied, Ms. Henry argues Kohl's committed a deceptive act prohibited by the CSPA.

{¶11} Following discovery, the parties filed cross motions for summary judgment. The trial court subsequently granted Kohl's motion for summary judgment and denied Ms. Henry's motion for summary judgment.

{¶12} The trial court determined there was "no evidence that [Kohl's] practice of applying a Kohl's Cash coupon before applying a percentage off coupon when a consumer stacks two coupons amounts to an unfair or deceptive practice."  Specifically,

3

the trial court held: (1) the practice does not exclude, reserve, limit, modify or set forth a condition for redeeming a Kohl's Cash coupon, (2) the Kohl's Cash coupon specifically states the practice, and (3) Ms. Henry and no other consumer had a reasonable belief that Kohl's Cash would not be applied first, because the Kohl's Cash coupon explicitly stated the practice.

{¶13} Ms. Henry now appeals, asserting the following assignment of error:

{¶14} "The trial court erred by granting Defendant's motion for summary judgment on the Plaintiff's Consumer Sales Practices Act claim when Defendant committed a deceptive act by failing to disclose a material limitation on a written offer in close proximity to the offer."

{¶15} We affirm the trial court's granting of summary judgment to Kohl's, albeit for different reasons than those given by the trial court.

**Standard of Review**

{¶16} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶9. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Id.*

{¶17} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial

4

court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶40.

{¶18} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798." *Id.*

<h3 style="text-align:center">Law and Analysis</h3>

{¶19} The CSPA is codified in R.C. Chapter 1345. It prohibits an "unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). The Ohio Attorney General has the express authority to define "with reasonable specificity" acts which violate the CSPA. R.C. 1345.05(B)(2). These rules must be "liberally construed and applied to promote their purposes and policies." Ohio Admin.Code 109:4-3-01(A)(1).

5

### *The Advertisement Rule*

**{¶20}** As previously indicated, the Kohl's Cash advertisement offered customers the opportunity to earn $10 Kohl's Cash coupons for every $50 the customers spent during a specified "earning period."

**{¶21}** Ms. Henry alleges the Kohl's Cash advertisement violated Ohio Admin.Code 109:4-3-02(A)(1), entitled "[e]xclusions and limitations in advertisements," which is a substantive rule the Ohio Attorney General promulgated pursuant to its rule-making authority (the "advertisement rule"). It states as follows:

**{¶22}** "It is a deceptive act or practice [1] in connection with a consumer transaction [2] for a supplier, [3] in the sale or offering for sale of goods or services, [4] to make any offer in written or printed advertising or promotional literature [5] without stating clearly and conspicuously in close proximity to the words stating the offer [6] any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood." Ohio Admin.Code 109:4-3-02(A)(1).

**{¶23}** The undisputed evidence establishes that under the CSPA, this matter involves a "consumer transaction," and Kohl's is a "supplier."

**{¶24}** The CSPA administrative rules define "offer" as "any attempt to effect, or solicitation of an offer to enter into a consumer transaction by agent, advertisement, or otherwise." Ohio Admin.Code 109:4-3-01(C)(3). The Kohl's Cash advertisement was an "offer," since it solicited customers to offer to purchase Kohl's merchandise and earn Kohl's Cash coupons. This "offer" was also contained in "written or printed advertising or

6

promotional literature" that involved "the sale or offering for sale of goods." Ohio Admin.Code 109:4-3-02(A)(1).

{¶25} The parties dispute centers on Ms. Henry's assertion that Kohl's practice of applying Kohl's Cash coupons before percent-off coupons (the "order of application") constituted a "material limitation" on the offer contained in the Kohl's Cash advertisement. Therefore, the meaning of "material limitation" as applied to the language of the Kohl's Cash advertisement is dispositive.

### *Material Limitation*

{¶26} The CSPA administrative rules do not define "material limitation." Instead, the advertisement rule contains several examples of the "types of material exclusions, reservations, limitations, modifications, or conditions of offers which must be clearly stated." Ohio Admin.Code 109:4-3-02(A)(2).

{¶27} These examples include: (1) "additional charges" relating to motor vehicles, clothing, floor covering, delivery, and mail orders, (2) different features or higher rates at other outlets controlled by the suppler, (3) hour or day restrictions, (4) a requirement that a complete set be purchased, (5) a requirement that a minimum or maximum amount be purchased, (6) trade-ins, and (7) rebates that require repeat purchases. *See* Ohio Admin.Code 109:4-3-02(A)(2)(a)-(j).

{¶28} Kohl's contends that the advertisement rule defines "material limitations" as "those that limit the offer to certain times, places, amounts, or products and those that impose additional charges before the offer may be redeemed." This appears to be Kohl's characterization of the above examples rather than an actual definition, so we decline to adopt it. In addition, the examples are "intended to be illustrative only and do not limit the

7

scope of any section of the Revised Code or of this or any other rule or regulation." Ohio Admin.Code 109:4-3-02(A)(3).

{¶29} None of the Ohio courts which have applied the advertisement rule have specifically defined "material limitation," but some of the cases provide additional examples of acts that violate the rule.

{¶30} These additional examples include: (1) failing to disclose an additional limitation on obtaining a refund for an extended warranty plan. *Lewis v. DR Sawmill Sales, Inc.,* 10th Dist. Franklin No. 04AP-1096, 2006-Ohio-1297, ¶17-18; (2) failing to disclose that an advertised financing rate was "subject to approved credit." *Crow v. Fred Martin Motor Co.*, 9th Dist. Summit No. 21128, 2003-Ohio-1293, ¶20, 25; (3) failing to disclose the supplier's ability to change terms of a sales commission program. *State ex rel. Montgomery v. Purchase Plus Buyer's Group, Inc.*, 10th Dist. Franklin No. 01AP-1073, 2002 WL 723707, *6-7 (Apr. 25, 2002); (4) a model agency's failure to disclose that a model must first purchase photographs, photography services, or a modeling portfolio. *Doody v. Worthington*, Franklin M.C. No. M 9011CVI-37581, 1991 WL 757571, *3 (Apr. 10, 1991); (5) failure to disclose eligibility conditions on receiving a prize. *State ex rel. Fisher v. Lasson*, Logan C.P. No. 92 10 0193, 1994 WL 912252, *3 (Oct. 14, 1994); and (6) failing to disclose age restrictions, income limitations, the requirement that both spouses attend a sales presentation, and the length of the sales promotion in the offering of memberships in a camping resort. *State ex rel. Celebrezze v. Erie Shores Resort & Marina, Inc.*, Ashtabula C.P. No. 88320, 1989 WL 572075, *1 (Apr. 26, 1989).

{¶31} Ms. Henry cites one Ohio case and several federal cases for the proposition that "cost" and/or "price" is "material." None of these cases is relevant to our inquiry, as

8

they either do not involve the CSPA, and/or the courts were determining the issue of "materiality" in a much different setting than in this case. Further, our inquiry is not whether "cost" and/or "price" is "material" but whether the order of application is a "material limitation."

**{¶32}** In the absence of an express definition of "material limitation," we must determine and apply its common usage. *State ex rel. Baroni v. Colletti*, 130 Ohio St.3d 208, 2011-Ohio-5351, ¶18, quoting *State ex rel. Turner v. Eberlin*, 117 Ohio St.3d 381, 2008-Ohio-1117, ¶14 (courts "must read undefined words and phrases [in statutes and administrative rules] in context and construe them in accordance with rules of grammar and common usage").

**{¶33}** "The interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand." *Id.* Courts "do not have the authority" to dig deeper than the plain meaning of an unambiguous rule "under the guise of either statutory interpretation or liberal construction." *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶8, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347 (1994).

**{¶34}** This remains true even in the context of the CSPA. *See Renner v. Procter and Gamble Co.*, 54 Ohio App.3d 79, 88 (4th Dist.1988) (applying plain meaning of a CSPA administrative rule did not "contravene the liberal construction to be accorded the rules"); *Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.*, 95 Ohio App.3d 183, 186 (12th Dist.1994) (the language of a CSPA administrative rule required "no construction"); *Struna v. Ohio Lottery Comm.*, 10th Dist. Franklin No. 03AP-787, 2004-Ohio-5576, ¶19

(expert's conclusions that materials were deceptive did not consider the "plain language" of a CSPA administrative rule).

{¶35} Further, "nothing in the statutory mandate to liberally construe the CSPA requires [a court] to adopt an unreasonable construction." *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, ¶18 (4th Dist.). In fact, courts are directed to avoid such results. *Id.*, quoting *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543-44 (1996) ("We must also construe statutes to avoid unreasonable or absurd results").

{¶36} With these principles in mind, we define "material limitation." According to the Merriam-Webster Dictionary, "material" means "having real importance or great consequences." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/material (accessed May 22, 2019). "Limitation" means "something that limits," which is further defined as "something that bounds, restrains, or confines." *Id.*, https://www.merriam-webster.com/dictionary/limitation (accessed May 22, 2019) and https://www.merriam-webster.com/dictionary/limits (accessed May 22, 2019). In other words, the order of application must constitute an important restriction on the offer set forth in the Kohl's Cash advertisement.

### *Application of the Advertisement Rule*

{¶37} Based on the above authorities, Kohl's practice of applying Kohl's Cash coupons before percent-off coupons does not constitute a "material limitation" on the offer contained in the Kohl's Cash advertisement.

{¶38} The "offer" contained in the Kohl's Cash advertisement was an offer to purchase Kohl's merchandise and *earn* $10 Kohl's Cash coupons for every $50 spent.

The order of application did not restrict Ms. Henry's ability to purchase Kohl's merchandise and earn $10 Kohl's Cash coupons for every $50 spent to any extent. In fact, on March 30, 2013, Ms. Henry did just that—she purchased $375.89 in merchandise and earned a $70 Kohl's Cash coupon, consistent with the Kohl's Cash advertisement.

**{¶39}** The trial court held that the order of application did not "exclude, reserve, limit, modify or set forth a condition for *redeeming* a Kohl's Cash coupon." (Emphasis added.) Even if we construe the Kohl's Cash advertisement as an offer to *redeem* a Kohl's Cash coupon, the order of application did not constitute a "material limitation" on this offer either. The order of application did not restrict Ms. Henry's ability to *redeem* her Kohl's Cash coupon to any extent. In fact, on April 2, 2013, Ms. Henry purchased $80.24 in merchandise, produced a $70 Kohl's Cash coupon, and received a price reduction of $70.

**{¶40}** Ms. Henry argues that the order of application is a "material limitation" because a customer "always pays more" when a Kohl's Cash coupon is applied first.

**{¶41}** Ms. Henry's total purchase price would have been less if Kohl's had applied the percent-off coupon before the Kohl's Cash coupon. For instance, during the April 2nd transaction, Ms. Henry produced a 20 percent-off coupon in addition to her $70 Kohl's Cash coupon. Kohl's applied the percent-off coupon second, which further reduced the purchase price by $2.05. If Kohl's had applied the 20 percent-off coupon first, the purchase price would have been initially reduced by $16.05.

**{¶42}** However, this is a result of the order of application's effect on the percent-off coupon rather than any effect on the Kohl's Cash coupon. The total dollar amount of savings realized under a percent-off coupon is necessarily dependent on the purchase

11

price. Obviously, 20 percent of $80.24 amounts to a larger dollar figure (i.e., $16.05) than 20 percent of $10.24 (i.e., $2.05). By contrast, a Kohl's Cash coupon will always reduce the purchase price by the total dollar amount listed on the particular Kohl's Cash coupon, as Ms. Henry's April 2nd transaction illustrates.

**{¶43}** If anything, the order of application restricts a customer's ability to use a *percent-off coupon.* However, the percent-off coupon is not the target of Ms. Henry's CSPA claim.[1]

**{¶44}** Ms. Henry also argues that the order of application constitutes an "additional charge" similar to the examples set forth above. We disagree. Ms. Henry did not have to pay any more than advertised to *earn* a Kohl's Cash coupon. In addition, Ms. Henry did not have to spend any particular amount to *redeem* the Kohl's Cash coupon. The order of application only affected the total amount of Ms. Henry's savings under the percent-off coupon. Under either order of application, Ms. Henry still saved money using both the Kohl's Cash coupon and the percent-off coupon.

**{¶45}** Since the order of application did not constitute any limitation, much less a "material limitation," on the offer contained in the Kohl's Cash advertisement—the offer to purchase Kohl's merchandise and earn a Kohl's Cash coupon—Kohl's did not violate the advertisement rule by failing to disclose it in close proximity to the offer.

**{¶46}** Ms. Henry cannot establish a "deceptive act" in violation of the advertisement rule as a matter of law. Accordingly, the trial court did not err in determining that the advertisement rule did not apply.

---

1. The back of the 20 percent-off coupon states that "dollar-off discounts" will be applied first. The parties dispute whether a Kohl's Cash coupon qualifies as a "dollar-off discount," but we need not consider this issue since Ms. Henry's CSPA claim involves only the Kohl's advertisement.

12

### *Reasonableness/Deception*

**{¶47}** Some Ohio courts have determined that a technical violation of the CSPA does not automatically constitute a violation of the statute. *See Lester v. Wow Car Co., Ltd.*, S.D.Ohio No. 2:11-cv-850, 2014 WL 2567087, *10 (June 6, 2014).

**{¶48}** In such instances, courts consider "reasonableness." *See, e.g., Shumaker supra*, at ¶21-22 (despite a technical violation of an FTC rule, the court engaged in a reasonableness inquiry to determine whether it constituted a violation of the CSPA); *Conley v. Lindsay Acura*, 123 Ohio App.3d 570, 575 (10th Dist.1997) ("we decline to hold that reasonableness plays no part whatsoever in the determination as to whether an act amounts to deceptive, unconscionable, or unfair conduct"); *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake No. 2006-L-187, 2007-Ohio-3594, ¶27, quoting *Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861, ¶15 (8th Dist.) ("Courts shall apply a reasonableness standard in determining whether an act amounts to deceptive, unconscionable, or unfair conduct").

**{¶49}** In addition, courts have considered whether a consumer "could have been deceived" by a supplier's conduct. *See, e.g., Ferron v. EchoStar Satellite, LLC*, 410 Fed.Appx. 903, 908 (6th Cir.2010), citing *Chesnut v. Progressive Cas. Ins. Co.*, 166 Ohio App.3d 299, 2006-Ohio-2080, ¶24 (8th Dist.) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 158 (12th Dist.1987).

**{¶50}** In the present case, the trial court determined that "[Ms. Henry] and no other consumer had a reasonable belief that Kohl's Cash would not be applied first." Since Ms. Henry is not able to establish a technical violation of the advertisement rule as a

matter of statutory interpretation, it is not necessary for us to consider reasonableness or whether Ms. Henry could have been deceived.

**{¶51}** Finally, although our analysis differs from that of the trial court, this court has the power to affirm a grant of summary judgment on a different basis than that used by the trial court. *Capital One Bank (USA), NA v. Reese*, 11th Dist. Portage No. 2014-P-0034, 2015-Ohio-4023, ¶70. This is so because reviewing courts affirm and reverse judgments, not the reasons for the judgments. *Geneva v. Fende*, 11th Dist. Ashtabula No. 2009-A-0023, 2009-Ohio-6380, ¶33.

**{¶52}** For the foregoing reasons, the trial court properly granted Kohl's motion for summary judgment.

**{¶53}** Ms. Henry's sole assignment of error is without merit, and the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.