[Cite as *In re G.M.B.*, 2019-Ohio-3884.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | Case Nos. 19CA12 |
| ADOPTION OF: | : | 19CA13 |
| | : | |
| G.M.B. and H.L.B. | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| | : | **Released: 09/19/19** |

_____
<u>APPEARANCES:</u>

James C. Aranda, Lancaster, Ohio, and James K. Hill, Circleville, Ohio, for
Appellant.

Susan Gwinn, Athens, Ohio, for Appellee.
_____

McFarland, J.

{¶1} T.B. appeals the trial court's judgment that dismissed her adoption

petitions. Appellant raises the following assignment of error:

> "The trial court erred as a matter of law in dismissing the Petitions because
> placement is only a prerequisite to a final order of adoption and does not
> affect the standing of a petitioner."

{¶2} The children's biological mother is deceased. Following the mother's

2013 death, the children lived with Appellant, their maternal grandmother. In

2017, the juvenile court placed the children in the legal custody of Appellee, their

maternal grandfather.[1]  In March 2018, Appellee filed petitions to adopt the

children.  Later in the year, Appellant also filed petitions to adopt the children.

{¶3}  On September 5, 2018, Appellee filed a motion to dismiss Appellant's

adoption petitions.  He alleged that Appellant's petition is barred by the

jurisdictional priority rule and suffers from various other deficiencies.  Appellant

filed a memorandum contra and asserted that she would be able to correct any

deficiencies.  The court denied Appellee's motion to dismiss.

{¶4}  On January 22, 2019, Appellee filed a second motion to dismiss "for

failing to prosecute, for lack of standing, for lack of jurisdiction, and for lack of

consent of the legal custodian."

{¶5}  On March 18, 2019, the trial court dismissed Appellant's adoption

petitions.  The court concluded that "a person seeking to adopt a child who is

living with a legal custodian, must either obtain the permission of the legal

custodian to place the child in their home, must obtain an order of the juvenile

court changing legal custody, or must obtain an order from the probate court for an

adoptive placement."  The court noted that Appellant acknowledged that the

children did not live with her.  The court additionally found that more than six

months had elapsed since Appellant filed her adoption petitions, that she had not

sought placement, and that she had not obtained a court order for placement.  The

---

[1] The record does not contain any indication why the children were removed from Appellant's care and placed with Appellee in 2017.

court thus concluded that Appellant did not meet a prerequisite for the finalization of an adoption and that she lacked standing. The court, therefore, dismissed her adoption petitions.

{¶6} In her sole assignment of error, Appellant argues that the trial court erred by dismissing her adoption petitions. Specifically, she asserts that the trial court erred as a matter of law by concluding that she lacked standing to adopt the children because the children had not been placed in her home. Appellant claims that because she is the children's grandmother, she need not obtain a pre-adoptive approval for placement under R.C. 5103.16(E) and need not otherwise have the children placed in her home in order to file an adoption petition. Appellant asserts that when a grandparent files an adoption petition, the court must hold a hearing to determine whether all required consents have been obtained and whether the adoption is in the child's best interest. Appellant claims that nothing in the adoption statutes requires the child to reside with a grandparent before a court may consider that grandparent's petition to adopt. She contends that the court instead may consider the adoption petition and then either grant a final order of adoption or an interlocutory order.

A

{¶7} A dismissal based upon a lack of standing essentially is a dismissal based upon a lack of jurisdiction to proceed with an action.[2] *See* Klein and Darling, Ohio Civil Practice, Sections 17:11 and 17:23.  A motion to dismiss based on lack of standing involves a question of law that we review independently and without deference to the trial court.  *See Bank of America v. Stevens,* 4th Dist. Hocking No. 16CA24, 2017-Ohio-9040, 2017 WL 6398844, ¶ 23, citing *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20.

B

{¶8} In general, "standing relates to a party's right to make a legal claim or seek judicial enforcement of a legal duty or right." *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 24, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, citing *Black's Law Dictionary* 1442 (8th Ed.2004).  " 'It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he

---

[2] We observe that "no defense has given the judiciary more trouble in determining the essential nature of the defense, how it is to be raised, when it is to be raised, and the effect of the dismissal if the defense is successful" than the defense of lack of standing.  Klein and Darling, *Ohio Civil Practice*, Section 17:18.  The authors elaborated:

> It has always been difficult to identify the true essence of the defense of lack of standing because it is something of a chameleon.  In some cases it assumes the guise of failure to join a necessary or indispensable party, while in others it appears as a lack of capacity to sue, failure of commencement, or failure to state a claim on which relief can be granted.  Indeed, in any given case, it contains elements of all of these defenses, depending on the viewpoint from which it is approached.

*Id.* at Section 17:10.

has, in an individual or representative capacity, some real interest in the subject matter of the action.' " *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 8, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas,* 35 Ohio St.2d 176, 179, 298 N.E.2d 515 (1973).

{¶9}  R.C. 3107.03 specifies who may file an adoption petition.  The statute provides:

> The following persons may adopt:
>
> (A) A husband and wife together, at least one of whom is an adult;
> (B) An unmarried adult;
> (C) The unmarried minor parent of the person to be adopted;
> (D) A married adult without the other spouse joining as a petitioner if any of the following apply:
> (1) The other spouse is a parent of the person to be adopted and supports the adoption;
> (2) The petitioner and the other spouse are separated under section 3103.06 or 3105.17 of the Revised Code;
> (3) The failure of the other spouse to join in the petition or to support the adoption is found by the court to be by reason of prolonged unexplained absence, unavailability, incapacity, or circumstances that make it impossible or unreasonably difficult to obtain either the support or refusal of the other spouse.

{¶10}  Under R.C. 3107.03, Appellant has standing to file an adoption petition.  According to her petition, she is an unmarried adult.  Moreover, she is the children's maternal grandmother.  Thus, R.C. 3107.03 gave Appellant standing to file an adoption petition.

{¶11}  The trial court, however, determined that Appellant lacked standing because she failed to request that the court place the children in her home.  The

court found that placement in an adoption petitioner's home is a "precondition for the finalization of an adoption."

{¶12} Appellant asserts that the trial court erred by determining that the adoption statutes require the children to be placed in her home before Appellant could seek to adopt the children. Appellant claims that the trial court misconstrued the adoption statutes. Appellant contends that the adoption statutes, and in particular R.C. 5103.16, do not require that a child be placed with a grandparent before a court may consider the grandparent's petition to adopt.

C

{¶13} Whether a trial court properly interpreted a statute is a matter of law that an appellate court reviews de novo, without deference to the trial court's determination. *E.g., State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9; *In re Adoption of B.M.W.,* 4th Dist. Adams No. 10CA899, 2010–Ohio–5214, at ¶ 13.

{¶14} " 'It is a cardinal rule of statutory construction that where the terms of a statute are clear and unambiguous, the statute should be applied without interpretation.' " *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11, quoting *Wingate v. Hordge,* 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979), citing *Provident Bank v. Wood,* 36 Ohio St.2d 101, 304 N.E.2d 378 (1973). Accordingly, a court's first step when considering the meaning of a statute

"is always to determine whether the [rule or] statute is 'plain and unambiguous.' "
*Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203,
quoting *State v. Hurd,* 89 Ohio St.3d 616, 618, 734 N.E.2d 365 (2000); *see also*
*State ex rel. Cordray v. Midway Motor Sales, Inc.,* 122 Ohio St.3d 234, 2009-
Ohio-2610, 910 N.E.2d 432, ¶ 15, quoting *Slingluff v. Weaver,* 66 Ohio St. 621, 64
N.E. 574 (1902), paragraph two of the syllabus (stating that if words used in statute
or administrative rule " 'be free from ambiguity and doubt, and express plainly,
clearly and distinctly, the sense of the law-making body, there is no occasion to
resort to other means of interpretation' "). If the language is plain and
unambiguous, courts must apply it as written. *Wilson* at ¶ 11, quoting *State v.*
*Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13 (" 'If [the
statute or rule] is not ambiguous, then we need not interpret it; we must simply
apply it.' "). When the language used in a statute or rule " 'is plain and
unambiguous, and conveys a clear and definite meaning, we must rely on what the
[legislative body or rule-making authority] has said.' " *Id.*, quoting *Jones v. Action*
*Coupling & Equip., Inc.,* 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172,
¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth,* 87 Ohio St.3d 549, 553, 721
N.E.2d 1057 (2000).

{¶15} Additionally, courts must "give effect only to the words the
legislature used, making neither additions to, nor deletions from, the statutory

language." *Id.*, citing *Columbia Gas Transm. Corp. v. Levin,* 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19.  Furthermore, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' "  *State ex rel. Baroni v. Colletti,* 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18, quoting *Morning View Care Ctr.–Fulton v. Ohio Dept. of Human Servs.,* 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36 (10th Dist.).

{¶16}  Thus, when interpreting a statute, courts first look to the text of the rule, "reading words and phrases in context and construing them according to the rules of grammar and common usage."  *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21.  Additionally, "[a] fundamental canon of statutory interpretation is the presumption that each word in a statute was included by the legislature for a reason."  *A.S. v. J.W.*, --- Ohio St.3d ---, 2019-Ohio-2473, --- N.E.3d ---, citing Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 174-179 (2012); *State ex rel. Bohan v. Indus. Comm.*, 147 Ohio St. 249, 251, 70 N.E.2d 888 (1946); R.C. 1.47(B).

{¶17}  A statute or rule is ambiguous when the language "is 'capable of bearing more than one meaning.' "  *Jacobson* at ¶ 8, quoting *Dunbar v. State,* 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16.  A court that is reviewing a statute or administrative rule for ambiguity should direct its "attention

* * * beyond single phrases, and * * * should consider, in proper context, all words used by the [rule-making body] in drafting [the regulation] with a view to its place in the overall [regulatory] scheme." *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. "Without 'an initial finding' of ambiguity, 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.' " *Jacobson* at ¶ 8, quoting *Dunbar* at ¶ 16.

D

{¶18} When an adoption is arranged privately between a parent or parents and a third-party, R.C. 5103.16 applies. *In re Adoption of T.G.B.*, 4th Dist. Adams No. 11CA919, 2011-Ohio-6772, 2011 WL 6930185, ¶¶ 4-9, citing *In re Adoption of J.A.S.*, 126 Ohio St.3d 145, 2010-Ohio-3270, 931 N.E.2d 554, ¶ 7. R.C. 5103.16(D) states, in relevant part, as follows:

> (D) No child shall be placed or received for adoption or with the intent to adopt unless placement is made by a public children services agency, an institution or association that is certified by the department of job and family services * * * or custodians in another state or foreign country, or unless all of the following criteria are met:
> (1) Prior to the placement and receiving of the child, the parent or parents of the child personally have applied to, and appeared before, the probate court of the county in which the parent or parents reside, or in which the person seeking to adopt the child resides, for approval of the proposed placement specified in the application and have signed and filed with the court a written statement showing that the parent or parents are aware of their right to contest the decree of adoption subject to the limitations of section 3107.16 of the Revised Code;

(2) The court ordered an independent home study of the proposed placement * * * and after completion of the home study, the court determined that the proposed placement is in the best interest of the child;

(3) The court has approved of record the proposed placement.

"Stated otherwise, unless the child has been placed or received for adoption by a public children services agency or related institution, 'the biological parents must appear before and obtain approval from the probate court.' " *In re Placement of A.R.V.*, 2016-Ohio-4929, 68 N.E.3d 410 (11th Dist.), ¶ 13, quoting *J.A.S.* at ¶ 18.

{¶19} "R.C. 5103.16 was enacted to curb black-market adoptions by requiring some agency supervision or court approval of private placements." *J.A.S.* at ¶ 13, citing *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 656, 665 N.E.2d 1070 (plurality opinion). The *J.A.S.* court explained that by enacting R.C. 5103.16, the General Assembly sought "to prevent private independent placements that may involve fraud, misrepresentations, or the exchange of money to coerce parents to relinquish a baby." *Id.* The court elaborated:

> "The intent of the legislature in enacting R.C. 5103.16 was to provide some measure of judicial control over the placement of children for adoption which is not conducted under the auspices of a statutorily recognized and authorized agency. That measure of judicial control is accomplished by having the parents of the child personally appear before the proper probate court for approval of the placement and adoption." *Id.*, quoting *Lemley v. Kaiser* (1983), 6 Ohio St.3d 258, 260, 6 OBR 324, 452 N.E.2d 1304.

{¶20} However, R.C. 5103.16 does not apply in all private adoptions. Instead, the statute expressly excludes adoptions by "a stepparent, a grandparent, a grandparent's husband or wife, a legal custodian, or a guardian." R.C. 5103.16(E).

The statute excludes stepparents, grandparents, legal custodians, and guardians because "a private placement with any of those persons imposes less need for protection." *Id.* at ¶ 14. The need for protection diminishes in stepparent and grandparent adoptions because "[s]tepparents and grandparents have a family or biological connection to the birth parents." *Id.* Thus, the likelihood of fraud, misrepresentation, or financial coercion is sufficiently low in stepparent and grandparent adoptions to eliminate the need for a court to approve a pre-adoptive placement.

{¶21} Here, we agree with Appellant that R.C. 5103.16(D) does not apply and did not require the court to approve a pre-adoptive placement. Appellant is the children's maternal grandmother, and R.C. 5103.16(E) explicitly exempts grandparents from the pre-adoptive approval process. Thus, Appellant was not required to obtain pre-adoptive approval for placement in order to give her standing to file an adoption petition. The trial court, therefore, incorrectly found that Appellant lacked standing to proceed with her adoption petition.

{¶22} Accordingly, based upon the foregoing reasons, we sustain Appellant's sole assignment of error, reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.

**JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Costs assessed to Appellee.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Probate Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY:  _____
Matthew W. McFarland, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**