## FRANK *v.* BARNES.

(Decided January 26, 1931.)

*Messrs. Tyler, McMahon, Smith & Wilson* and *Mr. P. R. Taylor,* for plaintiff in error.
*Messrs. Doyle & Lewis,* for defendant in error.

LLOYD, J.   On November 2, 1929, the defendant in error, Bradbury S. Barnes, commenced an action in

the court of common pleas against the plaintiff in error, Irving S. Frank, to recover a judgment on two promissory notes, signed by Frank and given as part of the purchase price of lots 4 and 7, in block 15, Lawrence Estate Land Company subdivision in the city of Miami, Dade county, Florida. Upon the trial a verdict was returned in favor of Barnes, and Frank now seeks to reverse the judgment thereon, claiming that the notes were without consideration and that the entire transaction relating to the purchase by him of the property was null and void because of certain alleged fraudulent representations affecting the value thereof, made to him by Leon J. Lichtenstetter and others in the employ of Johnson & Moffat; it being contended that the evidence discloses that Johnson & Moffat acted as Barnes' agents in negotiating the sale to Frank, and that the court erred in giving to the jury before argument the following instruction requested by counsel for defendant in error: "You are instructed that defendant Frank received a good and sufficient deed conveying the premises to him and that the same was sufficient consideration for the execution of the notes to the plaintiff Barnes."

It is claimed also that the deed for the lots from Barnes and wife to Frank was not "signed, sealed and delivered in the presence of witnesses in compliance with the statutes of Florida," which provide that the deed shall be in writing, signed, sealed and delivered in the presence of at least two subscribing witnesses, and that the acknowledgments of Barnes and his wife were taken in the state of Florida by a notary public of the state of Rhode Island.

The story revealed by the evidence is the prototype of many that presumably might be told by those who were disillusioned by the collapse of the Florida land boom.

It appears that on and prior to July 17, 1925, the plaintiff, Bradbury S. Barnes, who resided in Providence, Rhode Island, owned the lots above described, having paid therefor the sum of $75,000. On that date, in consideration of $3,000 paid to him through Johnson & Moffat, as his agents, he entered into a written option agreement for the sale of the aforesaid premises to "Stanley E. Glauber or his assigns," the $3,000 so paid to apply on the purchase price of $105,000, if the option was exercised on or before August 16, 1925, on which date it expired. If the option was exercised the balance of the purchase price was to be paid as follows: $39,500 cash, the assumption of four mortgages aggregating $40,000, the remaining $22,500 to be paid in one and two years, and to be secured by a fifth mortgage upon the real estate in question. This agreement also provided that an abstract of title would be furnished, showing marketable title to the property, and that upon the exercise of the option and the payment of the stipulated purchase price a warranty deed for the property would be delivered, and that Messrs. Johnson & Moffat should be paid a commission of 5 per cent. on the purchase price. These two lots constitute one parcel 50 feet in width and 290 or 300 feet in depth, one of them fronting on Flagler street and the other on First street, and are distant between a mile and a mile and a half from the business district of Miami, and four or five miles easterly of Hialeah, a town of not more than 2,500 population. On one of the lots

stood a two-story residence, the other being unimproved. Barnes was advised by his agents, Johnson & Moffat, of the terms of the proposed option purchase by Glauber, and approved same, after which it was executed by Johnson & Moffat, as agents of Barnes. The office of the firm of Dick & Schrager, also real estate brokers in Miami, adjoined those of Johnson & Moffat, both located in the same building and each apparently using a common reception room.

Frank had become acquainted in Toledo with Schrager, as well as with Max Ettinger, a salesman in the employ of Dick & Schrager, and knew that they were in the real estate business in Miami. Frank left Toledo on August 14, 1925, bound for Miami, and arrived in Miami on the morning of the 16th. He had not previously been in Miami. On the same train were Charles Woolner and Dr. Eppstein, also from Toledo, and friends of Mr. Frank.

Upon arrival in Miami they went to a hotel, and after registering, these three went to the real estate office of Dick & Schrager, Mr. Frank's purpose being to see Mr. Schrager. Finding Schrager in his office, Frank told him that he "wanted to look at some Florida real estate." Schrager thereupon introduced him to a Mr. Lichtenstetter, who, it was later learned, was a salesman in the employ of Johnson & Moffat. After the introduction, Schrager said to Lichtenstetter: "I have a client from Toledo who is interested in buying Miami real estate. I have a prospect from Toledo." Whereupon Lichtenstetter said: "Be sure and show Mr. Frank the Barnes property on Flagler Street." Ettinger, in his automobile, then took Frank, Woolner and Eppstein about the city, Schrager accompanying them. Vari-

ous pieces of real estate, some "close to town and some farther out," including the so-called Barnes property, were pointed out, and looked at by Frank; prices of some of them being given by Ettinger and Schrager. A stop of at least ten minutes was made at the lots in question, Frank and the others getting out of the automobile to look at them. During this inspection trip they stopped at the office of another real estate broker, Jacobson by name, who pointed out certain properties on a map. Leaving there, they pursued their sight-seeing tour, finally returning about five o'clock in the afternoon to the office of Johnson & Moffat, when, according to Frank, they all "sat down around a big table" and discussed "the Barnes tract on Flagler Street," Lichtenstetter saying that the property was the best buy in Miami; that the plans were prepared for a million dollar theater at the corner of Twelfth and Flagler; that the Seaboard Railroad Company had purchased real estate within two blocks of the property, upon which a passenger depot would immediately be erected; that Twelfth street, located about one block north of the property, was the only thoroughfare leading from the business district of Miami to Hialeah, a city of about 25,000 population; that the lot was 50 feet wide by 300 feet deep, and $130,000 was the lowest price for which the property could be sold; that his statements about the property "were positive facts and that he would not tell me anything that was untrue." The defendant, Frank, testified that: "Jacobson came into the office when we were discussing this property. He said, 'I have got a good buy for you on Flagler Street.' I said 'Show me on the map where it is.' It was the same, exactly

the same property that these men were trying to sell me. I said 'How much do you want for it' and he said '$120,000.00 or $125,000.00.' Lichtenstetter then said 'He could quote you $20,000.00 or $30,-000.00 less, but he could not deliver it to you, so that doesn't make any difference what price he gives you; we are the exclusive agents for this property and nobody else can sell it to you.' '' Frank then testified that then ''another man came in and said: 'What piece of property are you discussing?' and they said 'The Barnes property on Flagler Street.' He said: 'What price did you quote on it?'. He said: '$130,-000.00.' He said: 'I am sorry you made that price. I can get $175,000.00 for it.' Mr. Lichtenstetter said 'That is the price we quoted and we will stick to our word. If Mr. Frank buys the property, it is off the market.' ''

Frank further testified that after some further talk he gave his check to Johnson & Moffat for $67,-500, and the next morning gave them his two notes, each for $11,250, which, with the $67,500 cash, and the mortgages on the property amounting to $40,000, aggregated the agreed purchase price of $130,000. The notes were to be secured by a mortgage on the property, and Lichtenstetter, Frank claims, was to furnish him with a first-class deed and abstract. Frank then immediately entrained for Toledo, Dr. Eppstein and Mr. Woolner returning with him.

The mortgage given to secure the notes was recorded, and with the notes was sent by Johnson & Moffat to Barnes, who had theretofore, with his wife, executed a warranty deed to Frank for the two lots and had mailed it to Johnson & Moffat. This deed was recorded on September 5, 1925, in the public

records of Dade county, Florida, and was received by Frank in Toledo, through the mail, in March or April, 1926. The deed was a printed form, such as is used in Florida, and was executed and acknowledged by Mr. and Mrs. Barnes in Providence, Rhode Island, before Clarence Bowmer, a notary public of that city, whose seal, imprinted thereon, has on it the words "Clarence Bowmer, Notary Public, Providence, Rhode Island." At the top of the certificate of the notary the words, "State of Rhode Island, County of Providence," are substituted for the printed words, "State of Florida, County of Dade," but the concluding part thereof reads, "Witness my hand and official seal at Providence, County of Providence, State of Florida," the notary neglecting to substitute "Rhode Island" for the printed word "Florida." Then follows the notary's signature, below which appear the words, "Notary Public, State of Rhode Island."

In April, 1926, Frank returned to Florida for the purpose, he says, "of trying to locate the abstract," which he finally did locate "in a little neighboring city, Cocoanut Grove," to procure which he was compelled to pay $100. He was in Miami for two days and then returned to Toledo. On February 16, 1926, he paid $900 interest on the two notes. When in Miami in April, he met Mr. Ringold, formerly of Toledo, with whom he "placed the sale of this property to get the best price he could." After Frank received the deed, a brother, living in Miami, rented the residence for three or four months, sending the rent to Frank, and so far as the evidence discloses Frank still has the deed and is in possession of the property.

Woolner and Eppstein did not testify, and no other testimony was presented by Frank as to the fraudulent representations which he claims were made to him, and which he claims induced him to purchase the Florida property. He did not ask for a receipt and received none for the $67,500 cash which he says he paid, and no memorandum was made as to the terms and conditions of the sale. There is no evidence that Barnes had anything to do with the transaction other than the execution of the deed, which was in conformity with the option given by him to Glauber and his assigns, or that he knew anything about the negotiations of Frank for the property, or had ever discussed with anybody any sale or proposed sale thereof except that expressed in the Glauber option. It is obvious that Barnes could not sell the property to any one except Glauber or his assigns until the option expired, and that although Johnson & Moffat were his agents in negotiating and signing the option agreement with Glauber they were not and could not be his agents in any sale of the property prior to the expiration thereof. Barnes never saw Frank or communicated with him in any way, and the evidence fails to show that the real estate brokers in Miami were his agents for any purpose other than that expressed in the option agreement, or "binder," as it seems to have been called by the Miami realtors. Johnson & Moffat accounted to Barnes under the option for the proceeds of the sale as follows:

Statement of sale of lots 4 and 17, Block 15, Lawrence Estate;

| Sale price | | | $105,000 | 00 | | |
|---|---|---|---|---|---|---|
| Cash | | $42,500 | 00 | | | |
| 1st mtge assumed | | 27,000 | 00 | | | |
| 2d   "      " | | 4,087 | 50 | | | |
| 3d   "      " | | 3,912 | 50 | | | |
| 4th   "      " | | 5,000 | 00 | | | |
| 5th   " executed | | 22,500 | 00 | 105,000 | 00 | |

| | | | | | $42,500 | 00 |
|---|---|---|---|---|---|---|
| Cash | | | | | $42,500 | 00 |
| Less Binder | | | $3,000 | 00 | | |
| Int. on 1st mtge 7/10 to 8/16 | | | 216 | 00 | | |
| Int. on 2d   "   2/20 to 8/16 | | | 163 | 50 | | |
| Int. on 3d   "   3/5  to 8/16 | | | 139 | 96 | | |
| Int. on 4th   "   4/22 to 8/16 | | | 126 | 67 | | |
| Taxes prorated 8 mos 28 days | | | 312 | 08 | | |
| Stamps | | | 65 | 00 | | |
| Abstracts | | | 10 | 00 | | |
| Commission | | | 5,250 | 00 | 9,283 | 21 |
| | | | | | $33,216 | 79 |

It is conclusive that Barnes had no knowledge that the property was sold to Frank for $130,000, or any knowledge that it had been sold for an amount in excess of the price to be paid to him under the option, and beyond that, so far as the evidence discloses, he was not interested. The evidence fails to show that Barnes had colluded with the Miami realtors, fraudulently or otherwise, to induce Frank to buy the property, or that they were his agents in the negotiations had with Frank.

So far, therefore, as the evidence shows, it must be concluded that Barnes is not chargeable with any of the representations, false or true, which Frank

claims were made to him while adventuring in Florida. We are also of the opinion that the other alleged errors, stressed by counsel for plaintiff in error, are not well founded.

The fact clearly appears that the deed to Mr. Frank was executed by Mr. and Mrs. Barnes in the city and county of Providence in the state of Rhode Island, and it is difficult to imagine that the law anywhere is such as to require that a deed, under all circumstances, must be delivered to the grantee in the presence of two witnesses. Such a law would make it rather expensive for an owner in Miami to execute and deliver a deed to a purchaser in London. The law in Florida, however, does not create so absurd a condition. Actual manual delivery of a deed is not always required to effectuate the grantor's intention to deliver; the filing and recording thereof being *prima facie* evidence of delivery, in the absence of any showing of fraud. *International Kaolin Co.* v. *Vause*, 55 Fla., 641, 46 So., 3; *Smith* v. *Owens*, 91 Fla., 995, 108 So., 891; *Lessee of Mitchell* v. *Ryan*, 3 Ohio St., 377.

The promissory notes given by Frank to Barnes were given as an integral part of the transaction in question. According to Frank, the sale and purchase of the Miami lots was consummated in accordance with the oral agreement made between him and the real estate brokers. Although not possessing the value that he permitted himself to believe it had, the property had and has value, and the notes were given as part of the agreed consideration to be paid therefor. The trial court did not err in giving to the jury the requested instruction of which counsel for Frank complain.

Finding no errors in the record prejudicial to plaintiff in error, the judgment is affirmed.

*Judgment affirmed.*

WILLIAMS and RICHARDS, JJ., concur.