[Cite as *Catley v. Boles*, 2020-Ohio-240.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| SHAWN C. CATLEY, ADMINISTRATOR, ESTATE OF PATRICIA BOLES WARNES, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2019-G-0198** |
| THOMAS BOLES, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2017 M 000955.

Judgment: Reversed and remanded.

*Paul J. Mooney*, Law office of Paul J. Mooney, 6579 Wilson Mills Road, Mayfield Village, Ohio 44143. (For Plaintiffs-Appellants).

*Michael A. Wagner*, Stevenson & Wagner, LLC, 137 Main Street, Suite 6, Chardon, Ohio 44024. (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} Appellants, Shawn C. Catley ("Mr. Catley"), administrator of the estate of Patricia Warnes ("Mrs. Warnes"), and John Warnes ("Mr. Warnes"), personally (collectively "appellants"), appeal the Geauga County Court of Common Pleas' judgment granting summary judgment in favor of appellee, Thomas Boles, individually and as trustee of the Stanley Boles and Veachel Boles Revocable Living Trust (the "trust")

(collectively referred to as "Mr. Boles"). The trial court found that since Mrs. Warnes did not exercise her power of appointment to transfer her interest in the undistributed trust property to an heir or other beneficiary, by the terms of the trust, her interest was transferred to her co-beneficiary and brother, Mr. Boles. Thus, the trial court found, as a matter of law, there was no genuine issue of material fact remaining for determination by the trier of fact, and Mr. Boles was entitled to transfer the entire property held in trust into his own name.

{¶2} Appellants raise one assignment of error. Specifically, they argue the trial court erred in determining Mr. Boles was entitled to prevail as a matter of law because the trial court did not consider whether appellants had standing in this case to protect the vested interest of Mrs. Warnes under the terms of the trust.

{¶3} This case presents the frequent unintended consequences of the so-called "trust mill" living trusts, which are most times unnecessary to accomplish the goals of a simple estate plan and unfortunately contain traps for those clients and attorneys alike, who are not well-versed in the intricacies of trust law. This case exemplifies the pitfalls of a "one size fits all" "cookie-cutter" trust document, exacerbated by sloppy blank-filling that inserts a misspelled name of a beneficiary. The evidence before us indicates that but for this mistake in properly identifying Mrs. Warnes, the deed meant to distribute the real estate from the trust to the beneficiaries would have been signed by both trustees and recorded, thus avoiding a costly lawsuit.

{¶4} This trust document is especially problematic because of the conflicting provisions regarding the disposition of trust assets after the death of the surviving spouse.

2

These conflicting provisions preclude a finding that as a matter of law Mrs. Warnes' estate has no interest in the subject real property.

{¶5} Moreover, it appears that there are genuine issues of material fact left to be determined by a trier of fact as to whether the delivery of a deed signed by Mr. Boles, as trustee, to Mrs. Warnes for her signature before her death in order to complete the distribution of the real property from the trust to Mr. Boles and Mrs. Warnes, individually, constitutes a final delivery of the trust res to Mrs. Warnes, thus negating the effect of the divestment clause.

{¶6} Thus, we find Mr. Catley's argument to have merit in part. The evidence submitted by the parties on summary judgment reveals Mr. Boles sent Mrs. Warnes a deed transferring their interests from the trust to them individually. Mr. Boles executed and delivered the deed to Mrs. Warnes for her signature.

{¶7} Further, Mr. Boles' motion for summary judgment did not raise and the court did not address the remaining claims for relief presented in the case, i.e., a breach of fiduciary duties and other equitable relief. We find that Mr. Catley's pleadings were sufficient to give him standing, both in his representative and individual capacity, to go forward with the claims for relief for action for land, quiet title, and partition. Thus, we reverse and remand the judgment of the Geauga County Court of Common Pleas for further proceedings in accordance with this opinion.

**Substantive and Procedural History**

{¶8} Stanley and Veachel Boles, the father and mother, respectively, of Mrs. Warnes and Mr. Boles, created the revocable living trust at issue on April 1, 2004. The only asset in the trust was their residential property located in Chardon Township, Ohio.

3

The trust provided that upon the death of the surviving spouse, the trust estate would be divided into equal shares and held for the benefit of the named beneficiaries and co-trustees, their children, Mrs. Warnes and Mr. Boles.

{¶9} Stanley Boles survived his spouse, and then he passed away on October 20, 2011. Both beneficiaries had residences on the property. Mrs. Warnes, with her husband, Mr. Warnes, lived in one home, and Mr. Boles in the other.

{¶10} The evidence submitted by the parties on summary judgment reflects that in March of 2017, both of the beneficiaries were represented by attorneys and were in the process of transferring the real estate from the trust to themselves individually. Mr. Boles' former attorney sent Mrs. Warnes a deed signed by Mr. Boles as co-trustee that was intended to be a final distribution transferring their joint interests out of the trust. Mrs. Warnes received the deed but did not sign it because her name was misspelled (which notably, is also misspelled in the trust agreement itself as "Mrs. Warner"). She made several attempts, both personally and with the assistance of her daughter-in-law, Christy J. Catley ("Mrs. Catley"), to contact Mr. Boles' former attorney to have the deed corrected but was unsuccessful since he had apparently retired from the practice of law. A message left at his office requesting a return call from the attorney was never returned.

{¶11} Mrs. Warnes passed away approximately two and half months later, on May 24, 2017, without appointing her interest in the trust through a will or any other written instrument. Subsequently, on July 27, 2017, as the remaining sole beneficiary, Mr. Boles transferred the property into his name.

{¶12} Mr. Catley, as representative of Mrs. Warnes' estate, and Mr. Warnes, personally, filed the instant action against Mr. Boles in the lower court, alleging claims of quiet title, partition, action for land, breach of fiduciary duty, and other equitable relief.

### *Motion for Summary Judgment*

{¶13} Mr. Boles filed a motion for summary judgment. Specifically, he argued that Mrs. Warnes' interest was divested upon her death pursuant to the terms of the trust. Mr. Boles further argued that because of this divestment, appellants could not prove a legal interest in the subject real property to make a claim under R.C. 5303.03 (action for land), and that any interest that appellants may have in the real property is not a legal possessory claim under R.C. 5303.01 (quiet title); hence, they had no standing to assert their claims for relief. Appellants' prayer for equitable relief was not addressed in any way.

{¶14} The evidentiary material attached to the motion for summary judgment consisted of a copy of the trust and deposition transcripts for Mr. Warnes and Mr. Catley.

### *Brief in Opposition to Summary Judgment*

{¶15} In turn, appellants filed Mr. Boles' deposition transcript, in which he acknowledged it was his parents' intent that he and his sister share equally in the real estate property that was held in the trust, and a brief in opposition to Mr. Boles' motion for summary judgment. Appellants argued that Mr. Catley, as the representative of Mrs. Warnes' estate, and Mr. Warnes, personally, are in actual possession of the property and, thus, had standing to bring the claims. They contended that the real property was not immediately distributed to the vested beneficiaries upon Stanley Boles' death but delayed for several years because Mrs. Warnes and Mr. Boles disagreed as to how the

5

real property should be divided into two equal shares. They could not resolve, among other issues, the costs of a survey for a lot split, the cost of a new driveway (the two residences shared one driveway), and the cost of a new well. The parties had been in the midst of a final distribution when Mrs. Warnes passed away. Thus, she maintained her vested interest at the time of her death.

{¶16} The evidentiary material attached to appellants' response in opposition to summary judgment consisted of the following exhibits:

{¶17} Exhibit 1 was a June 22, 2017 letter (approximately one month after Mrs. Warnes' death) from Mr. Boles' former attorney to Mr. Boles that requested he sign a deed to transfer his "parents' property into [his] name as the Successor Trustee" and sign an enclosed "Affidavit of Successor Trustee." The letter went on to advise Mr. Boles that: "You will also need to know that upon rereading article V of your parents' trust, it would appear that title of this property was meant to be transferred to you and your sister immediately upon the death of your father, leaving your deceased sister owning 1/2 of the property. It would appear that under paragraph D the property would only go to you if your sister was deceased before your father's death on October 20, 2011. That of course is not what I thought might happen earlier, but as sole Successor Trustee, your [sic] will now have that ability to actually divide the property through a lot split."

{¶18} Exhibit 2 was a letter, dated March 6, 2017, from Mr. Boles' former attorney to Mrs. Warnes, informing her that under the terms of the trust, she and Mr. Boles were named co-successor trustees and that the property should be transferred into both of their names. The attorney enclosed a prepared warranty deed to transfer

6

the property into their joint names, which had been signed by Mr. Boles.  The letter and prepared warranty deed as noted above, however, misspelled Mrs. Warnes' name as "Patricia Warner."

{¶19}  Exhibit 3 was an affidavit from Mrs. Catley attesting that Mrs. Warnes received the signed warranty deed.  Mrs. Warnes was upset because her name was misspelled on the deed (and letter) as Patricia "Warner."  Mrs. Warnes indicated to Mrs. Catley that she wanted to sign the deed although the name was misspelled, and Mrs. Catley indicated to Mrs. Warnes that she would call the attorney's office.  Both she and Mrs. Catley attempted to contact the attorney, but each was informed he had retired and his office failed to respond further.

{¶20}  Exhibit 4 was an affidavit from the attorney who represented Mrs. Warnes upon the passing of Stanley Boles.  This attorney attested that in March of 2017, Mr. Boles and Mrs. Warnes were in negotiations to transfer the real estate from the trust to themselves as beneficiaries.  On March 6, 2017, Mr. Boles' attorney sent a letter with a deed directly to Mrs. Warnes without his knowledge.  Due to her failing health, Mrs. Warnes never signed the deed.  Mrs. Warnes attorney attested that had he received the communication and deed from opposing counsel, he would have advised Mrs. Warnes to sign the deed to "complete the transaction that was negotiated and anticipated by my client."

*Reply to Plaintiffs' Opposition to Motion for Summary Judgment*

{¶21}  Mr. Boles filed a reply to appellants' brief in opposition to motion for summary judgment, arguing that appellants ignored the law regarding standing in trust

7

disputes and that because Mrs. Warnes failed to exercise her power of appointment, her vested interest divested upon her death.

### *The Trial Court's Ruling*

{¶22} The trial court found the following terms of the trust controlling:

{¶23} Art. V, "Dispositive Provisions After Death of Surviving Spouse":

{¶24} "(C) 'Distribution of Remainder of Trust Estate:' Upon the death of the Surviving Spouse, the Trustee shall, after paying or reserving for all amounts payable, as provided in ARTICLE V PARAGRAPHS A and B, divide the remainder of the trust estate into shares set forth as follows and shall hold, administer and distribute each share according to the provisions of ARTICLE V PARAGRAPH E hereinbelow:

{¶25} "PATRICIA WARNER [sic] – A ONE-HALF (1/2) SHARE

{¶26} "THOMAS BOLES – A ONE-HALF (1/2) SHARE.

{¶27} "(D) Distribution of Deceased Beneficiary's Share.   In the event a beneficiary named in Paragraph C of this ARTICLE V is not then living, the share of such deceased beneficiary shall be distributed to the surviving named beneficiary per capita."

{¶28} "(E) 'Distributions of Income and Principal:' (4)  *Upon the death of a beneficiary for whom a trust is then held prior to final distribution to such beneficiary*, if said decedent is survived by issue, that portion of such trust (including both principal and any accrued or undistributed income) which is not exempt from the generation-skipping transfer tax imposed by Chapter 13 of the Internal Revenue Code of 1986 (or any successor provisions) *shall be distributed to such one or more persons or entities, including the decedent's estate, and on such terms and conditions, either outright or in trust, as the decedent shall have appointed by the last dated instrument delivered to the*

8

*Trustee, including a Will (whether or not admitted to probate), specifically referring to and exercising this power of appointment. Any of such portion of the trust as is not appointed,* together with that portion of the trust that is exempt from the generation-skipping transfer tax, *shall be distributed according to the terms of ARTICLE V PARAGRAPH D. hereinabove as though said beneficiary had predeceased the Surviving Spouse.* (Emphasis added.)

{¶29} The trial court concluded that Mr. Boles was entitled to summary judgment since the "record is wholly deficient of any evidence that Patricia Warnes appointed anyone through her will or other written instrument to transfer her interest in the Trust to her own heirs or beneficiaries. The Trust itself is specific that absent such an 'appointment' by Warnes, her interest in the trust transfers to her co-beneficiary, the Defendant. While it may well be true that the Defendant had, prior to Warnes death, acknowledged and recognized Warnes equal interest in the property, and that the Defendant even took steps to accomplish putting half of the Trust property into Warnes' name, the harsh reality is that no such split or other resolution of their joint ownership ever occurred prior to her death, resulting in the Trust language controlling the outcome. Defendant was thereafter entitled to transfer the property into his sole name. Whether Summary Judgment for the Defendant results in this matter because the Plaintiffs lack 'standing' or because the terms of the Trust simply dictate this conclusion regardless of Plaintiffs' standing, the conclusion is the same: the Defendant prevails as a matter of law. This Court cannot rewrite the terms of the Trust."

{¶30} Appellants raise one assignment of error on appeal:

9

{¶31} "The trial court committed prejudicial error in granting Defendants-Appellees' Motion for Summary Judgment."

## Summary Judgment Standard of Review

{¶32} We review de novo a trial court's order granting summary judgment. *Henry v. Kohl's Dept. Stores, Inc.*, 11th Dist. Lake No. 2018-L-113, 2019-Ohio-2094, ¶16, citing *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶9. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Id.*

{¶33} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.* at ¶17, quoting *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶40.

10

{¶34} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112." *Id.* at ¶18, quoting *Welch* at ¶40.

{¶35} Further, the Supreme Court of Ohio in *Dresher* went on to hold that when *neither* the movant or the respondent provides evidentiary materials demonstrating that there are no material facts in dispute, the movant is not entitled a judgment as a matter of law, as the moving party bears the initial responsibility of informing the trial court of the basis for the motion "*and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Id.* at 296.

{¶36} In *Mitseff*, *supra*, the court held that a party seeking summary judgment must *specifically* delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond. (Emphasis added.) *Id.* at syllabus. Accordingly, the court made clear that the party moving for summary judgment bears the burden of affirmatively demonstrating with respect to every essential issue in each count of the complaint that there is no genuine issue of fact, even with regard to the issues on which the plaintiffs would have the burden of proof should the case go to trial. *Id.* at 115. Thus, when the movant fails to address a claim for relief in the motion, the respondent is not obliged to argue that issue. *Id.* at 116.

**Law and Analysis**

{¶37}   Appellants argue that the trial court erred in granting Mr. Boles' motion for summary judgment because the only issue he raised in his motion was whether appellants had standing to "protect the vested interest of Patricia Warnes in the trust asset."

{¶38}   A review of Mr. Boles' motion for summary judgment reveals he actually argued there were no genuine issues of material fact remaining for determination by the trier of fact for three reasons:  (1) as a preliminary matter, appellants lacked standing to bring an action to quiet title pursuant to R.C. 5303.01, and/or (2) a petition in action for land pursuant to R.C. 5303.03; and (3) that under the terms of the trust, Mrs. Warnes' vested interest in the real property was divested upon her death leaving Mr. Boles as the sole beneficiary of the trust.

{¶39}   The trial court did not base its ruling on appellants' alleged lack of standing to bring claims pursuant to R.C. 5303.01 or R.C. 5303.03.  Rather, the trial court found that as a matter of law, the terms of the trust stated that Mr. Boles was the sole beneficiary and trustee of the trust upon Mrs. Warnes' unfortunate passing before the final distribution of the trust since she failed to exercise her power of appointment.

{¶40}   We will analyze the standing question following a de novo standard of review.

***Standing***

{¶41}   The first issue posed by appellants is whether they properly set forth an action to quiet title and/or an action in ejectment, and thus, had standing to pursue the underlying case.

12

{¶42} "Standing exists only when (1) the complaining party has suffered or has been threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, (2) the act in question caused the injury, and (3) the relief requested will redress the injury." (Citations omitted.) *Cartwright v. Batner*, 2d Dist. Montgomery No. 25938, 2014-Ohio-2995, ¶46.

{¶43} Moreover, "a court of common pleas has authority both in law *and equity* to ascertain legal title to land." (Emphasis added.) *Sturgell v. Bott*, 12th Dist. Fayette No. CA90-09-014, 1991 WL 84026, *2 (May 20, 1991), citing *Avery v. Avery*, 107 Ohio App. 199 (6th Dist.1958). "This jurisdiction may be invoked by an action to quiet title, pursuant to R.C. 5303.01, or an action for the recovery of real property (ejectment) pursuant to R.C. 5303.03." *Id.*

### Action to Quiet Title Pursuant to R.C. 5303.01

{¶44} Pursuant to R.C. 5303.01, entitled "Action to quiet title," "[a]n action may be brought by *a person in possession of real property*, by himself or tenant, against any person who claims an interest adverse to him, for the purpose of determining such adverse interest. Such action *may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property*, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein." (Emphasis added.)

{¶45} "The statute expressly allows a person in possession, 'by *himself* * * *,' to bring an action to quiet title." (Emphasis added.) *Sturgell* at *2.

{¶46} A review of appellants' amended complaint reveals that they adequately pleaded an action to quiet title. Under the alleged facts, appellants stated that Mr.

13

Warnes has resided on and been in possession of the property prior to 2005, when he and Mrs. Warnes moved into her parents' residence on the real property. Mr. Boles lived in the second house on the property. After Mr. and Mrs. Boles passed away, the Warnes continued to live in the one house on the real property and to pay the real estate taxes of the property. Thus, they alleged both Mrs. Warnes' estate and Mr. Warnes have an interest in the real property.

{¶47} Under Count Two, "Quiet Title," appellants pleaded that they have actual possession of the property and an interest in the remainder of Mrs. Warnes' vested interest. Thus, they have sufficient possession to maintain an action to quiet title. *Id. See also Paden v. Miller*, 5th Dist. Guernsey No. 00CA29, 2001 WL 1782890, *3 (Feb. 8, 2001) (R.C. 5303.01 requires either possession or a claim of an interest in remainder or reversion); *NBRT Properties, Inc. v. ATFH Real Property, LLC*, 7th Dist. Mahoning No. 17 MA 0136, 2018-Ohio-4724, ¶30 (Appellants did not have standing to bring a quiet title action because they did not have actual or constructive possession or an interest in remainder or reversion in the property at issue).

### Action for Land Pursuant to R.C. 5303.03

{¶48} Pursuant to R.C. 5303.03, in a "Petition in action for land," "* * * it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession. It is not necessary to state how the plaintiff's estate or ownership is derived."

{¶49} A review of Count One, "Action for Land," reveals appellants also adequately pleaded that Mr. Warnes is currently in possession of the real property and

14

has been in possession prior to 2005, along with Mrs. Warnes, who now has an interest through her estate. Appellants further alleged that they have a legal estate in the real property, are entitled to possession of the property, and that Mr. Boles is unlawfully attempting to keep them out of possession.

{¶50} We find that such averments are sufficient under the rules of notice pleading to allege a claim for relief for land pursuant to R.C. 5303.03.

{¶51} Thus, at the very least, under the facts of this case, it appears appellants have standing because they sufficiently pleaded interests – actual possession and a legal interest – in their amended complaint.

### Vested Interest Capable of Divestment

{¶52} The third question posed by Mr. Boles in his motion for summary judgment is whether as a matter of law, by the terms of the trust, Mrs. Warnes' vested interest was subject to defeasance upon her passing because she failed to appoint, either through her will or another written document, a beneficiary.

{¶53} "When construing provisions of a trust, our primary duty is to 'ascertain, within the bounds of the law, the intent of the * * * settlor.'" *McCoy v. Witzleb*, 2d Dist. Greene No. 2005 CA 25, 2005-Ohio-6678, ¶24, quoting *In re Brooke,* 82 Ohio St.3d 553, 557 (1998), quoting *Domo v. McCarthy*, 66 Ohio St.3d 312, 314 (1993). "The settlor's intention is determined by considering the language used in the trust, reading all the provisions of the trust together." (Citation omitted.) *Id.*, citing *Mumma v. Huntington Natl. Bank of Columbus*, 9 Ohio App.2d 166, 169 (10th Dist.1967). When the terms of the trust are not ambiguous, the intent of the settlor can be determined by the express language of the trust. (Citation omitted.) *Id.* Words used in the trust

15

instrument are presumed to be used according to their common, ordinary meaning. (Citation omitted.)  *Id.*

{¶54}  A vested interest is subject to complete defeasance or divestment upon the occurrence of a named event.  *Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 157 (2000), citing *Papiernik v. Papiernik*, 45 Ohio St.3d 337, 343 (1989).  Stated differently, "[i]t is thus clear that the term 'defeasance' includes both the process by which an interest expires by its own term before it ever becomes possessory, and the process by which an interest is cut short by reason of some executory limitation or by the exercise of some power."  *In re Trust of Findeiss*, 5th Dist. Muskingum No. CT2003-0050, 2005-Ohio-2985, ¶20, quoting *Papiernik* at 343, quoting 1 Simes & Smith, The Law of Future Interests  (2 Ed.1956) 95, Section 113.

{¶55}  The trust agreement, pursuant to Article V, "Dispositive Provisions After Death of Surviving Spouse," granted Mrs. Warnes and Mr. Boles as the beneficiaries, an equal one-half share vested interest upon the death of the surviving spouse.

{¶56}  Their interest, however, pursuant to Article V, Par. E(4), was subject to complete defeasance if they failed to appoint a beneficiary and passed away before a final distribution.

{¶57}  In relevant part, Article V, Par. E(4) states:  "[u]pon the death of a beneficiary * * * prior to final distribution to such beneficiary * * * that portion of such trust * * * shall be distributed to such one or more persons or entities, including the decedent's estate, and on such terms and conditions, either outright or in trust, *as the decedent shall have appointed by the last dated instrument delivered to the Trustee, including a Will (whether or not admitted to probate), specifically referring to and*

16

*exercising this power of appointment. Any of such portion of the trust as is not*

*appointed * * * shall be distributed to the terms of ARTICLE V PARAGRAPH D.*

*hereinabove as though said beneficiary had predeceased the Surviving Spouse.*"

(Emphasis added.)

{¶58} By the terms of the trust, Mrs. Warnes was required to appoint, either by will or another written instrument, a successor beneficiary before the final distribution of her interest. There is no question that she died intestate and that there is no other written instrument naming a beneficiary to her interest. Thus, Mrs. Warnes had a vested interest subject to complete defeasance, which interest may have expired because she did not exercise her power of appointment. *See Natl. City Bank* at 158 (where the specific language of the testamentary trust at issue directed that the interest of a beneficiary in his or her share was divested should he or she die before the share was fully distributed to him or her, and directed how that share was to be gifted over to his or her other family members).

{¶59} But our analysis cannot begin and end with this provision of the trust.

**Ambiguities in the Trust Provisions Regarding Vesting & Distribution**

{¶60} The agreement is contradictory as to the vesting and distribution of trust assets after the death of the last parent:

{¶61} Art. V, Par. C provides the trust assets were to remain in trust (1/2 for Mrs. Warnes; 1/2 for Mr. Boles): "(C) 'Distribution of Remainder of Trust Estate:' Upon the death of the Surviving Spouse, the Trustee shall, after paying or reserving for all amounts payable, as provided in ARTICLE V PARAGRAPHS A and B, divide the remainder of the trust estate into shares set forth as follows and shall hold, administer

17

and distribute each share according to the provisions of ARTICLE V PARAGRAPH E hereinbelow:

{¶62} "PATRICIA WARNER [sic] – A ONE-HALF (1/2) SHARE

{¶63} "THOMAS BOLES – A ONE-HALF (1/2) SHARE."

{¶64} Art. V, Par. E(1) and E(2) address distributions of income and principal and apply whether or not the beneficiaries have reached the age of 21.

{¶65} However, Art. V. Par. E(6) says the trustee shall distribute a beneficiary's share "free of trust" when he or she reaches age 21, subject to Art. VII, Par. S.

{¶66} It appears Mr. Boles and Mrs. Warnes were attempting to effectuate a distribution of their respective shares from the trust. Art. VII, Par. S says the trustee can withhold distribution if there are conflicting claims. From the evidentiary materials before us, that appears to be the case here. Mr. Boles and Mrs. Warnes, through counsel, were negotiating the terms of distributing the real property. This provision further states that the beneficiaries' interests remained "vested" during this withholding period. However, Art. V, Par. (E)4 provides for a divestment when a beneficiary dies before final distribution if the beneficiary did not exercise her power of appointment.

### Was There a Final Distribution?

{¶67} We disagree, then, with the trial court that the terms of the trust are unambiguous and controlling given these noted ambiguities and given the evidence of the mutual intent of Mr. Boles and Mrs. Warnes to transfer their interests from the trust by a deed signed and prepared by Mr. Boles' attorney, signed by Mr. Boles, and delivered to Mrs. Warnes shortly before Mrs. Warnes' untimely death.

18

{¶68} Whether this was a "delivery" of a deed sufficient to constitute a final distribution and vesting of title in Mrs. Warnes' name individually before her death is a question of material fact that remains to be determined.

{¶69} "A deed must be delivered to be operative as a transfer of ownership of land. *Kniebbe v. Wade* (1954), 161 Ohio St. 294, 297. 'Delivery imports transfer of possession or the right to possession of the instrument with the intent to pass title as a present transfer. It is essential to delivery that there not only be a voluntary delivery, but there must also be an acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property described in the deed.' (Emphasis deleted.) *Id.* at 297. If the grantee possesses the deed, then a presumption of delivery exists. See *id.* However, manual delivery is not essential. See *Dukes v. Spangler* (1878), 35 Ohio St. 119; *Lessee of Shirley v. Ayres* (1846), 14 Ohio 307, paragraph one of the syllabus ('It is not essential to the validity of a deed, that it be actually delivered to, or ever pass into the hands of the grantee'). Instead, "'the fact of delivery may be found from the acts of the parties preceding, attending, and subsequent to the signing, sealing, and acknowledgment of the instrument.'" *In re Kusar's Estate* (1965), 5 Ohio Misc. 23, 33, quoting *Dukes* at paragraph one of the syllabus." *Goddard v. Goddard*, 192 Ohio App.3d 718, 2011-Ohio-680, ¶28 (4th Dist.).

{¶70} "Recording a deed perfects delivery. See *Candlewood Lake Assn. v. Scott*, 10th Dist. Franklin No. 01AP–631, 2001 WL 1654288, (Dec. 27, 2001), citing *Romaniw–Dubas v. Polowyk*, 8th Dist. Cuyahoga No. 75980, 2000 WL 1144784 (Aug. 10, 2000). However, 'a deed does not have to be recorded to pass title. Whether or not recorded, a deed in Ohio passes title upon its proper execution and delivery, so far as

19

the grantor is able to convey it.' *Wayne Bldg. & Loan of Wooster v. Yarborough,* 11 Ohio St.2d 195, 212 (1967). Furthermore, '[a]ctual manual delivery of a deed is not always required to effectuate the grantor's intention to deliver; the filing and recording thereof being prima facie evidence of delivery, in the absence of any showing of fraud.' *Behymer v. Six,* 5th Dist. Nos. Morgan CA02–006, 2002-Ohio-6403, ¶13, citing *Frank v. Barnes*, 40 Ohio App. 328, 337 (1931), citing *Lessee of Mitchell v. Ryan,* 3 Ohio St. 377." *Id.* at ¶29.

{¶71} Both parties agree it was the settlors' intent that brother and sister share equally in the property, and that at the time of Mrs. Warnes untimely passing, she and Mr. Boles were represented by attorneys and in the process of a final distribution. In fact, Mr. Boles sent Mrs. Warnes a signed deed transferring their interests from the trust to each of them individually. It appears from the evidence submitted on summary judgment, specifically the affidavit of Mrs. Catley, that Mrs. Warnes wanted to sign but was troubled by the clerical error in the misspelling of her name and that she and Mrs. Catley attempted to contact the attorney who drafted the deed to get the deed corrected.

{¶72} Approximately one month after Mrs. Warnes passed away, Mr. Boles received a letter from his former attorney accompanied by a deed to transfer the property into Mr. Boles' name as "Successor Trustee." The attorney went on to advise Mr. Boles that "upon rereading article V of your parents' trust, it would appear that title of this property was meant to be transferred to you and your sister immediately upon the death of your father, leaving your deceased sister owning 1/2 of the property. It would appear that under paragraph D the property would only go to you if your sister was

20

deceased before your father's death on October 20, 2011.  That of course is not what I thought might happen earlier, but as sole Successor Trustee, your [sic] will now have that ability to actually divide the property through a lot split."

{¶73}   Further, the terms of the trust provide that if there are conflicting claims, as there were in this case, the parties' interests remain vested.  Pursuant to Art. VII, Par. S, the trustee may "withhold from distribution, in the Trustee's discretion, at the time for distribution of any property in this trust, without the payment of interest, all or any part of the property, so long as the Trustee shall determine, in the Trustee's discretion, that such property may be subject to conflicting claims, to tax deficiencies, or to liabilities, contingent or otherwise, properly incurred in the administration of the trust estate.    The Trustee is under no obligation to make such retention's [sic] and shall be under no liability whatever for the exercise of the failure to exercise such discretion.  *The interests of the beneficiaries hereunder shall be vested regardless of whether or not such assets are so retained* * * *."  (Emphasis added.)

{¶74}   Thus, there remains for determination a question of material fact whether Mr. Boles' delivery of a signed  deed to Mrs. Warnes constituted a final distribution given the parties' seemingly mutual intent and agreement to transfer their interests from the trust to themselves individually.  If so, Mrs. Warnes' vested interest did not divest upon her passing without the exercise of her appointment power and is part of her estate.

{¶75}   As the English philosopher, Thomas Hobbes observed:  "For where no covenant hath preceded, there hath no right been transferred, and every man has right to everything and consequently, no action can be unjust.  But when a covenant is made,

21

then to break it is unjust and the definition of injustice is no other than the not performance of covenant." Leviathan, Chapter 15 (1651). "'Justice' and 'equity' are substantially equivalent terms, if not synonymous. Equity imputes an intention to fulfill and obligation." *Brannon v. Adkins*, 7 Ohio Misc. 18, 20 (C.P.1966).

{¶76} In addition, inasmuch as we have determined that appellants' pleadings were sufficient to survive a standing challenge and the fact that Mr. Boles did not place at issue in his motion for summary judgment appellants' claims breach of fiduciary duties and other equitable relief, those claims, and the claims for action for land, quiet title, and partition remain for further determination.

{¶77} Thus, we reverse and remand the judgment of the Geauga County Court of Common Pleas for further proceedings in accordance with this opinion.

MATT LYNCH, J., concurs.

TIMOTHY P. CANNON, P. J., concurs in part and concurs in judgment only in part, with a Concurring Opinion.

_____

TIMOTHY P. CANNON P.J., concurring in part and concurring in judgment only in part.

{¶78} I concur in the judgment of the majority that appellants have standing. I concur in the balance of the judgment as well but would reach the conclusion with a more direct analysis. Article V, para. E(6) should be dispositive of appellants' claims. That provision states as follows:

> 6. Subject to a possible retention of some or all of the assets of the trust estate by the Trustee pursuant to ARTICLE VII PARAGRAPH S., whenever any beneficiary for whom a trust is then held shall have

22

attained the age of **twenty-one (21)** years, the Trustee shall distribute to such beneficiary, free of trust, the entire principal and accumulated income, if any, of his or her separate trust.

{¶79} Stanley Boles died on October 20, 2011. It was the duty of the trustees of his trust to transfer to both beneficiaries any interest they had in the trust because each was over 21 years of age. The trustees failed in that duty. There was never a need for Patricia Warnes to exercise a power of appointment because her interest should have been transferred to her in 2011. Patricia did not die until May of 2017. I would hold that, because the trustees failed in their duty to transfer Patricia's interest immediately after the death of Stanley, her interest was not subject to divestment.